FILED

FEB 24 2006

Property of U.S. District Court
District of Rhode Island

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CIVIL ACTION NO.: 05-505

JOHN OLIVEIRA,
Plaintiff

v.

TOWN OF DOUGLAS, MASSACHUSETTS; BOARD OF SELECTMAN FOR THE TOWN OF DOUGLAS, MASSACHUSETTS; SHIRLEY MOSCZYNSKI, Individually and as the Chairperson of the Board of Selectman for the Town of Douglas, Massachusetts; and JAY O'CONNOR, Alias, Individually and as Animal Control Officer, for the Town of Douglas, Massachusetts; PAMELA HOLMES, as Finance Director for the Town of Douglas, Massachusetts,
Defendants

**DEFENDANTS' MOTION TO DISMISS**

Now come the Defendants, Town of Douglas, Board of Selectman for the Town of Douglas, Shirley Mosczynski, Jay O'Connor, and Pamela Holmes, pursuant to Fed. R. Civ. P. 12(b)(6), and hereby Move to Dismiss Plaintiff's Complaint for Failing to State a Claim Upon Which Relief Can be Granted. As further grounds for their Motion, Defendants state:

1. This Court Lacks Personal Jurisdiction over the Massachusetts Defendants

2. The Plaintiff's Claims are Barred by the *Rooker-Feldman* Doctrine

3. The *Younger* Abstention Doctrine Precludes Plaintiff's Claims for Relief

4. Plaintiff's Civil Rights Claims Must Fail

    a. No Due Process Violation

    b. No Civil Rights Violation by Failure to Follow State Law

5. Municipal Officials Are Entitled to Qualified Immunity

6. The Individual Defendants are Absolutely Immune from Liability for Sworn Testimony

7. Plaintiff Failed to Serve the Individually-Named Defendants

In further support of their Motion, Defendants submit the accompanying Memorandum of Law incorporated here by reference.

WHEREFORE, Defendants Town of Douglas, Board of Selectman for the Town of Douglas, Shirley Mosczynski, Jay O'Connor, and Pamela Holmes, respectfully request that this Honorable Court Dismiss each Count of Plaintiff's Complaint against them, with prejudice and costs.

Respectfully submitted,

The Defendants,
TOWN OF DOUGLAS, BOARD OF SELECTMAN FOR THE TOWN OF DOUGLAS, SHIRLEY MOSCZYNSKI, JAY O'CONNOR, AND PAMELA HOLMES,
By their attorneys,

**PIERCE, DAVIS & PERRITANO, LLP**

John J. Cloherty III, RI Bar No. 5068
Ten Winthrop Square
Boston, MA 02110
(617) 350-0950

Providence Office:
128 Dorrance Street - Suite 400
Providence, RI 02903

I hereby certify that a tr[illegible]y of the above document was ser[illegible]pon (each party appearing pro se and) the attorney of record for each (other) party by mail (by hand) on 2/23/06.

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CIVIL ACTION NO.: 05-505

JOHN OLIVEIRA,
Plaintiff

v.

TOWN OF DOUGLAS, MASSACHUSETTS; BOARD OF SELECTMAN FOR THE TOWN OF DOUGLAS, MASSACHUSETTS; SHIRLEY MOSCZYNSKI, Individually and as the Chairperson of the Board of Selectman for the Town of Douglas, Massachusetts; and JAY O'CONNOR, Alias, Individually and as Animal Control Officer, for the Town of Douglas, Massachusetts; PAMELA HOLMES, as Finance Director for the Town of Douglas, Massachusetts,
Defendants

RECEIVED
FEB 24 2006
Property of U.S. District Court
District of Rhode Island

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

### I. Plaintiff's Factual Allegations

The Plaintiff alleges he is a resident of Bristol Rhode Island. See Pl.'s Compl. ¶ 1. In all other respects, however, Plaintiff's allegations arise from activities or property in the State of Massachusetts. The Plaintiff's dispute concerns the actions of the Animal Control Officer for the Town of Douglas Massachusetts. See Pl.'s Compl. ¶ 5 & Counts I-V. The named Defendants are the Town of Douglas itself, its Board of Selectmen, the Chairperson of the Board of Selectmen, the Town Animal Control Officer, and the Town Finance Director. See Pl.'s Compl. ¶¶ 2-5. Plaintiff keeps two dogs at his property he owns "for business purposes" in the Town of Douglas Massachusetts, ostensibly at the address of 86 Hemlock Street. See Pl.'s Compl. ¶¶ 6-8, 25.

The Plaintiff alleges he complained about the Town of Douglas' Animal Control\Officer's telephone conduct over five years ago in November 2000, after the Officer's had removed one of the dogs. See Pl.'s Compl. ¶¶ 9-15. Although the dates in the Complaint are non-sequential, it appears that Plaintiff alleges he was notified of a hearing about whether the dog was properly licensed and vaccinated, and that Plaintiff could not attend the hearing because "he could not drive at night," nonetheless at the hearing on November 28, 2000, the Board ordered that the "dog remaining on the property be banished from the Town of Douglas." See Pl.'s Compl. ¶¶16-20. Some three and one half years later, on April 26, 2004, Plaintiff alleges he was "issued a dog license by [the Town of] Douglas for said dog." See Pl.'s Compl. ¶ 22. Thereafter, in May 2004, a complaint was made about the dog, but the Town of Douglas purportedly failed to provide copies of the complaint to Plaintiff. See Pl.'s Compl. ¶¶ 24-27. After inquiries from Plaintiff's attorney to the Town, on July 23, 2004, the Town filed a Verified Complaint seeking injunctive relief "against Plaintiff as to his dog" in the Massachusetts Superior Court.[1] See Pl.'s Compl. ¶¶ 29-31. Plaintiff next alleges that, despite the Massachusetts litigation, "Plaintiff has been unable to have the necessary protection of his property in Douglas [Massachusetts]." See Pl.'s Compl. ¶ 33.

Based upon these factual allegations, Plaintiff brings five Counts in his Complaint. The Counts are untitled and do not specifically reference distinct causes of action. Instead, Count I asserts Defendants Mosczyski and O'Connor "received an injunction against Plaintiff as to his dog by purposely misrepresenting to the court all evidence proving that Plaintiff had complied with all orders of the Town." See Pl.'s Compl. ¶ 38. Count II of the Complaint once again alleges this

---

[1] Upon information and belief, the Massachusetts Superior Court issued the Preliminary Injunction on August 2, 2004, and the underlying Complaint is still pending in Worcester County Superior Court. See Douglas Bd. of Selectmen v. Oliviera, Mass. Super. Ct. No. WOCV- 2004-01436 (computer docket sheet attached hereto as **Exhibit A**).

purposeful misrepresentation to the Court by the same Defendants. See Pl.'s Compl. ¶¶ 45-46. Count III alleges that the "Town did not follow [its] By-laws when it took ... actions against Plaintiff," which purportedly renders the actions "unconstitutional and illegal." See Pl.'s Compl. ¶¶ 51-52. Count IV repeats the factual allegations contained in earlier paragraphs, then asserts that "[w]ith proper procedure and thorough investigation, the Civil Rights of Plaintiff would not have been violated." See Pl.'s Compl. ¶¶ 59-63, 67. Lastly, Count V, after again repeating some of the factual allegations, alleges the "Defendants had a duty to investigate and verify" the accusations in the Superior Court Complaint, and "breached its duty by stating untrue facts." See Pl.'s Compl. ¶¶ 79-81. For the reasons that follow, none of these Counts states a claim for relief, and Plaintiff's Complaint must be dismissed.

## II. Argument

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a party may by motion assert the defense that the complaint fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). In judging the sufficiency of a complaint, the court must accept the factual allegations in the complaint as true, construe them in the light most favorable to the plaintiff, and then determine if the complaint shows any set of facts which could entitle the plaintiff to relief. Gooley v. Mobil Oil Corp., 851 F. 2d 513, 514 (1st Cir. 1988). However, the court must "eschew any reliance on bold assertions, unsupportable conclusions and 'opprobrious epithets.'" Chongris v. Board of Appeals of Town of Andover, 811 F. 2d 36, 37 (1st Cir. 1987). This Court is obliged not to honor subjective characterizations, optimistic predictions, or problematic suppositions. Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).

**B. This Court Lacks Personal Jurisdiction over the Massachusetts Defendants**

In a similar case, the First Circuit found that the Massachusetts federal "district court properly held that it lacked personal jurisdiction over the out-of-state governmental entities." Glaros v. Perse 628 F.2d 679, 681 (1st Cir. 1980). The Glaros Court went onto dismiss Plaintiff's claim that he effected service under the local long-arm statute by stating Plaintiff "failed to allege facts that, if proved, would confer such long-arm jurisdiction over the out-of-state governmental entities. There were, for example, no concrete allegations in his complaint that these defendants transacted business in Massachusetts or caused tortious injury by an act or omission in Massachusetts, ... or engaged in other activity within the statute." See Id. (citing Mass. Gen. L. ch. 223A, § 3(a) and (c), the long-arm statute). So too here, Plaintiff's allegations are wholly confined to activity within the state of Massachusetts by Massachusetts municipal officers, there are no "concrete allegations" in the complaint of activity by the Town of Douglas or its officials within the State of Rhode Island. The Glaros Court spent some time refuting the Plaintiff's contention that unsupported allegations of conspiracy with in-state co-defendants would provide personal jurisdiction, however here no such conspiracy existed or is alleged. See Glaros v. Perse, 628 F.2d 679, 683 n. 5 (1st Cir. 1980) (stating "the district court lacked personal jurisdiction over the out-of-state municipal defendants in any event"). Thus Plaintiff's Complaint must be dismissed.

Looking to application of constitutional principles of personal jurisdiction, this case must be analyzed within the context of the familiar "minimum contacts" test enunciated in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Under this standard, the exercise of personal jurisdiction is permissible if (1) the party has "minimum contacts" with the territory of the "forum" and (2) the assertion of jurisdiction comports with "traditional notions of fair

play and substantial justice." Id. at 316, 66 S.Ct. 154 (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). Only if both these conditions are satisfied may the district court constitutionally bind the party to judgment. The First Circuit, has held that, at least in cases premised on diversity of citizenship, a federal district court cannot exercise personal jurisdiction unless the party has some affiliation--"minimum contacts"--with the state in which the court sits. See, e.g., United Elec., Radio. & Mach. Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1085 (1st Cir.1992). Under this reasoning, the "forum" of the district court is the same as the "forum" of the courts of the state encompassing the district. Id. In the years following International Shoe, the Supreme Court has attempted to define further the modern requirement of "minimum contacts." See, e. g., McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). These decisions establish a test of personal jurisdiction which turns ultimately on concepts of "reasonableness" and "fairness" and "traditional notions of fair play and substantial justice."

In the present case, the Town of Douglas Massachusetts, being a municipality outside of the State of Rhode Island, cannot "Conduct business" within the State of Rhode Island. There are no allegations that any of the Town's officials transacted any business within the State of Rhode Island. In fact, it is arguable that the Town officials are without authority to do so. It is only the Plaintiff, an alleged resident of Rhode Island, who has any connection to the State. Plaintiff has not alleged, nor can he establish, sufficient "minimum contacts" to give this Court personal jurisdiction over the Defendants, and thus the Complaint must be dismissed.

### C. **The Plaintiff's Claims are Barred by the *Rooker-Feldman* Doctrine**

As recently explained by the First Circuit, the "Rooker-Feldman doctrine--with certain exceptions (e.g., habeas corpus)--precludes a lower federal court from entertaining a proceeding to reverse or modify a state judgment or decree to which the assailant was a party. See Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); D.C. Ct. of App. v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Although res judicata doctrine would often achieve similar effects, Rooker-Feldman is at least quasi-jurisdictional, Picard v. Members of the Employee Retirement Bd., 275 F.3d 139, 145 (1st Cir.2001), premised on the rule that among federal courts only the U.S. Supreme Court has authority to invalidate state civil judgments. Although sometimes minimized by scholars, cf. Chemerinsky, Federal Jurisdiction § 8.1, at 450 (3d ed.1999), the doctrine is widely used by the federal court to prevent end-runs around state judgments." Mandel v. Town of Orleans, 326 F.3d 267, 271 (1st Cir. 2003).

The First Circuit went on to state, "Rooker-Feldman applies whether or not the federal and state causes of action are technically the same for purposes of claim preclusion, see, e.g., Maple Lanes, Inc. v. Messer, 186 F.3d 823, 825 (7th Cir.1999), cert. denied 528 U.S. 1118, 120 S.Ct. 939, 145 L.Ed.2d 817 (2000), or whether all of the familiar conditions for issue preclusion are met. See, e.g., Restatement (Second) of Judgments § 28 (1982). It is not necessary that the federal action formally seek to invalidate the state judgment; it is enough if the federal action would in substance defeat or negate a state judgment, for example if 'the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.' Hill v. Conway, 193 F.3d 33, 39 (1st Cir.1999) (quoting Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring)); see also Garry v. Geils, 82 F.3d 1362, 1369 (7th Cir.1996)." Mandel, supra at 271.

In the present case, Plaintiff is specifically bringing this federal suit due to the alleged improperly plead and prosecuted Massachusetts state court civil complaint. See Pl.'s Compl. Counts I-V. This is a blatant attempt to attack a state court judgment which Plaintiff contends was wrongly decided. Plaintiff is precluded by the Rooker-Feldman doctrine from bringing a "federal action [which] would in substance defeat or negate a state judgment." Hill v. Conway, 193 F.3d 33, 39 (1st Cir.1999). Furthermore, it is well-settled that once a court issues an order, the collateral bar doctrine prevents the loser from migrating to another tribunal in search of a decision he likes better. See e.g., Celotex Corp. v. Edwards, 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1955). Plaintiff's claim must be dismissed.

**D. The *Younger* Abstention Doctrine Precludes Plaintiff's Claims for Relief**

This Courts should abstain from deciding this case under the principles of federalism enunciated in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The first ground for the Younger decision was "the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law." Id., at 43, 91 S.Ct. at 750. The Court also offered a second explanation for its decision:

> "This underlying reason ... is reinforced by an even more vital consideration, the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.... The concept does not mean blind deference to 'States' Rights' any more than it means centralization of control over every

important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." Id., at 44, 91 S.Ct. at 750.

The Supreme Court later ruled that "[t]his concern mandates application of Younger abstention not only when the pending state proceedings are criminal, but also when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government. See Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 10-11, 107 S.Ct. 1519, 1525 - 1526 (1987). Thus, the general rule is that federal courts should not interject themselves into ongoing state adjudications, including administrative proceedings. See Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 623-27, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (extending Younger to some state administrative proceedings). This rule applies as long as the state forum provides an adequate opportunity to raise the petitioner's federal claims. Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); Maymó-Meléndez v. Alvarez-Ramírez, 364 F.3d 27, 35 (1st Cir. 2004). In the present case, although not alleged in the Complaint, the Plaintiff cannot dispute that the Massachusetts State Court proceeding is still ongoing. The practical interference with the state proceedings is manifest, and none of the limited number of exceptions to Younger abstention even arguably applies in this case (e.g., lack of adequate state remedies). See, e.g. Younger v. Harris, 401 U.S. 37, 45, 53-54, 91 S.Ct.

746, 27 L.Ed.2d 669 (1969); For Your Eyes Alone, Inc. v. City of Columbus., 281 F.3d 1209, 1215 n. 11 (11th Cir.2002). This Court should thus abstain from hearing this case and dismiss the Complaint.

**E. Plaintiff's Civil Rights Claims Must Fail**

Plaintiff's Complaint contains one Count alleging Defendants' actions were "unconstitutional" and that "Plaintiff was subject to deprivation of rights, privileges, and immunities secured to him by the Constitution and laws of the United States." See Pl.'s Compl. ¶¶ 53-54. The Complaint does not contain an express reference to 42 U.S.C. § 1983 as the mechanism to vindicate those rights. This omission, however, is not fatal to the claim. See Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 99 (1st Cir. 2004) (stating plaintiff's failure to expressly refer to 42 U.S.C. §§ 1981, 1983, and 1985 in Complaint does not affect the substance of the claims alleged).

Title 42 of the United States Code, section 1983, provides a vehicle for the protection and vindication of rights secured by the United States Constitution or by federal law. Baker v. McCollan, 443 U.S. 137, 146 n.3, 99 S. Ct. 2689, 2695 n.3, 61 L.Ed. 2d 433 (1979). Section 1983, by itself, does not create any substantive rights. Id. Section 1983 provides, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Essentially, in a civil rights action under Section 1983, the plaintiff must prove, by a preponderance of the evidence, that a person acting under color

of state law deprived him of a Constitutional or federally protected right. Tatro v. Kervin, 41 F.3d 9, 14 (1st Cir. 1994). The plaintiff must identify a specific right derived from a specific provision of the Constitution or federal law. Id.; see also, Albright v. Oliver, 510 U.S. --, 114 S.Ct. 807, 811, 127 L. Ed. 2d 114, 122 (1994).

In the present case, the Plaintiff has not articulated precisely which civil right or constitutional right he contends was implicated by the actions of the Town of Douglas or its Animal Control Officers. This alone is fatal to his civil rights claims. A fair reading of the Complaint reveals that Plaintiff objects to the filing of the Massachusetts Superior Court Complaint for Injunctive Relief, the veracity of the allegations in the Complaint, and the absence of a hearing by the Town before the filing of the Complaint. See Pl.' Compl. To the extent these allegations implicate any civil rights, Plaintiff's complaint fails to state a claim for relief.

**1. No Due Process Violation**

Plaintiff's complaint identifies grievances that the Town of Douglas filed a Superior Court Complaint seeking Injunctive Relief. See Pl.'s Compl. Counts I-V. Such claims would best be analyzed under the applicable Due Process Clause. The Fourteenth Amendment provides that "no State shall . . . deprive any person of life, liberty or property without due process of law." U.S. Const. amend XIV. The procedural component of the Due Process Clause of the Fourteenth Amendment requires that, before an individual is deprived of a constitutionally protected property interest by government action, he must be given "notice and opportunity for hearing appropriate to the nature of the case." Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542 (1985). Plaintiff here cannot claim, however, a procedural due process violation.

"The constitution does not require every procedural protection that might help; it simply

requires that a private person have a basically fair opportunity to convince the decision-maker, by presenting proofs and arguments and evidence and replies to the arguments of others." Newman v. Burgin, 930 F.2d 955, 961 (1st Cir. 1991). The present Complaint actually alleges that Plaintiff did receive a hearing, which he contests because the Defendants allegedly "purposely misrepresent[ed] to the court all evidence proving that Plaintiff had complied with all orders of the Town." See Pl.'s Compl. ¶ 38. Thus Plaintiff did obtain a hearing, presumably upon due notice. In these circumstances, Plaintiff's claim under the Due Process Clause must fail.

Furthermore, the prerequisite to a claim arising from an alleged procedural due process violation is the existence of a liberty or a property interest. Under Massachusetts law, at no time was Plaintiff in danger of imprisonment because of the injunctive relief sought, thus, Plaintiff's potential harm was limited to the monetary loss and the inconvenience of contesting the injunction, which falls short of a "liberty" interest. See, e.g. Meyer v. Nebraska, 262 U.S. 390, 399 (1923) (discussing definition of a liberty interest). The only property interest at stake is that of his dogs. Although the Complaint is silent as to the injunctive relief obtained by the Town, the Complaint does state the Town's order was that the "dog remaining on the property be banished from the Town of Douglas." See Pl.'s Compl. ¶ 20. This banishment did not deprive the Plaintiff of his property (the dog), but merely enforced the well-recognized public safety concerns of the Town. See, e.g. Commonwealth v. Flynn, 285 Mass. 136, 188 N.E. 627 (1934) (stating the provisions regulating keeping, collaring and licensing of dogs have been enacted for the purpose of protecting public from injury or damage done by dog); see also Mass. Gen. L. ch. 140 § 137 (governing the licensure of dogs). Indeed the Massachusetts General Laws explicitly authorize its cities and towns to "issue a warrant to such dog officer or officers directing him or them to seek out, catch and confine all dogs within the city or

town which then have not been licensed, collared or harnessed, and tagged, as required by this chapter, and to enter and prosecute a complaint for failure to comply with the provisions of this chapter against the owners or keepers thereof." Mass. Gen. L. ch. 140 § 151A.

Even if plaintiff had an actionable property interest, the procedural due process claim would still fail because such a claim is not deemed complete when the property deprivation occurs; it is only complete when the state fails to provide due process. Zinermon v. Burch, 494 U.S. 113, 126 (1990). The process at issue here is a Superior Court lawsuit, to which Plaintiff had notice and apparently contested the issuance of a Preliminary Injunction. There can be no due process violation by way of a municipality bringing a lawsuit to which Plaintiff can respond. Even if the subject of the Complaint is the municipal hearing, if a citizen is aggrieved of a municipal decision there are well-established post-deprivation remedies available. See Mass. Gen. L. c. 30A, §14 (providing any person aggrieved by a decision of a local Commission or Board may appeal the Board's decision to the state superior court department); Mass. Gen. L. ch. 249 § 4 (Certiorari review). These post-deprivation remedies preclude any possible procedural due process claim, and the Plaintiff's present lawsuit must be dismissed.

**2. No Civil Rights Violation by Failure to Follow State Law**

To the extent Plaintiff is aggrieved by the Town's alleged failure to follow it's Bylaws regarding the Dog Licensing, this does not give rise to a federal claim. The First Circuit "has repeatedly held...that rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process." Licari v. Ferruzzi, 22 F.3d 344, 349 (1st Cir. 1994), (quoting PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 31 (1st Cir.), cert. dismissed, 112 S. Ct. 1151 (1991)) (emphasis added). This Circuit's cases "make clear that a regulatory board does

not transgress constitutional due process requirements merely by making decisions 'for erroneous reasons' or by making 'demands which arguably exceed its authority under the relevant state statutes'." Licari, 22 F.3d at 350 (quoting Amsden, 904 F.2d at 757). The First Circuit has gone so far as to state "[i]t is bedrock law in this circuit, however, that violations of state law--even where arbitrary, capricious, or undertaken in bad faith--do not, without more, give rise to a denial of substantive due process under the U.S. Constitution." Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992) (emphasis added). Nothing in Plaintiff's Complaint justifies an exception to this "Bedrock law" thus Plaintiff's Complaint must be dismissed.

**F. Municipal Officials Are Entitled to Qualified Immunity**

The Plaintiffs Complaint names as individual Defendants the Chair of the Select Board, the Animal Control Officer and the Finance Director for the Town. See Pl.'s Compl. ¶¶ 2, 4-5. To the extent the public officials are named as Defendants in their individual capacity, they are entitled to qualified immunity from Plaintiffs alleged civil rights violations.

Under federal law, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity, which is a question of law, is an issue that is appropriately decided by the court during the early stages of the proceedings and should not be decided by the jury." Tatro v. Kervin, 41 F.3d 9, 15 (1st Cir. 1994); see also Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987) (motions for summary judgment based on qualified immunity should be favored). This is so because "[t]he entitlement is an immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

The standard for judging a motion for summary judgment, or a motion to dismiss, brought by a government official seeking qualified immunity is "whether a reasonable official could have believed his actions were lawful in light of clearly established law." Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994). Prior to determining whether a constitutional right was "clearly established" at the time of the alleged violation, a court must first decide "whether the plaintiff has asserted a violation of a constitutional right at all." Seigert v. Gilley, 500 U.S. 226, 232 (1991). As a prerequisite to that threshold decision, a plaintiff must state with particularity the exact nature of the constitutional infringement alleged so the court can properly focus its efforts. Merely stating a constitutional provision will not suffice: "[t]he right to due process of law is quite clearly established ..., and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. ... But if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of the qualified immunity inquiry." Anderson v. Creighton, 483 U.S. at 639 (1987); see also, Borucki v. Ryan, 827 F.2d 836, 838 (1st Cir. 1987) ("it is not sufficient for a court to ascertain in a general sense that the alleged right existed"). In the present case the Plaintiff has not articulated the specific Constitutional rights at issue, thus Defendants are left to assume it is the due process right. See Pl.'s Compl. ¶ 6. As discussed above, the individually named Defendants are entitled to qualified immunity because the Plaintiff cannot state a claim for relief as to a due process violation.

Inquiring further, according to Supreme Court precedent, merely negligent actions or omissions by state officials do not deprive a person of life, liberty or property within the meaning of the Fourteenth Amendment and thus are not actionable under §1983. Daniels v.

Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). See Germany v. Vance, 868 F.2d 9, 11 (1st Cir. 1989). Rather, a violation of the Due Process Clause can only occur when a state official acts with deliberate, reckless or callous indifference to the constitutional rights of the plaintiff. Germany v. Vance at 18; Febus-Rodriquez at 92. "An official displays such reckless or callous indifference when it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." Id. In the present case the actions of a local Animal Control Officer are authorized and according to Law. See, e.g. Mass. Gen. L. ch. 140 § 137 (governing the licensure of dogs); Mass. Gen. L. ch. 140 § 151A (authorizing municipal dog officers to seek out, catch and confine all dogs within the city or town which then have not been licensed and to enter and prosecute a complaint for failure to comply with licensing requirements). By any measure, the filing of a Superior Court Complaint pursuant to the statutory authority of a dog officer was "objectively legally reasonable." No reasonable public official would have reasonably believed that filing such a Complaint would have violated the motorist's constitutional rights. The Defendants' conduct was objectively legally reasonable, and therefor the individually named Defendants are entitled to qualified immunity from this lawsuit.

**G. The Individual Defendants are Absolutely Immune from Liability for Sworn Testimony**

To the extent Plaintiff alleges that the Defendants should be liable for civil rights violations for purported misrepresentations during the Preliminary Injunction Hearing, such claims are barred by the well settled law of testimonial immunity. The Supreme Court has clearly stated that the Federal Civil Rights Act does not authorize a convicted person to assert a damages claim against a police officer for giving perjured testimony at his criminal trial. Briscoe v. LaHue, 460 U.S. 325,

103 S.Ct. 1108 (1983). The High Court stated "[s]ubjecting government officials, such as police officers, to damages liability under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties. Section 1983 lawsuits against police officer witnesses, like lawsuits against prosecutors, 'could be expected with some frequency.' Police officers testify in scores of cases every year, and defendants often will transform resentment at being convicted into allegations of perjury by the state's official witnesses. As the files in this case show, even the processing of a complaint that is dismissed before trial consumes a considerable amount of time and resources." Briscoe v. LaHue, 460 U.S. 325, 103 S.Ct. 1108, 1119 (1983) (citing Imbler v. Pachtman, 424 U.S. 409, 425 (1976).

The doctrine of absolute immunity has also been extended to non-criminal testimony. It applies to grand jury witnesses. See, e.g. Alioto v. City of Shively, Kentucky, 835 F.2d 1173, 1174 (6th Cir.1987); Macko v. Byron, 760 F.2d 95, 97 (6th Cir.1985); San Filippo v. United States Trust Co., 737 F.2d 246, 254 (2d Cir.1984), cert. denied, 470 U.S. 1035 (1985); Kincaid v. Eberle, 712 F.2d 1023 (7th Cir.1983), cert. denied, 464 U.S. 1018 (1983). There is also authority supporting witness immunity to those presenting evidence at probation or parole revocation hearings. See, e.g. Tripati v. INS, 784 F.2d 345, 348 (10th Cir.1986), cert. denied, 108 S.Ct. 755, 98 L.Ed.2d 767 (1988) (quasi-judicial immunity); Johnson v. Kelsh, 664 F.Supp. 162 (S.D.N.Y. 1987) (holding Fire marshal absolutely immune for actions in capacity of witness at revocation proceeding). The absolute immunity for witnesses has been extended to other criminal proceedings such as bail revocation hearings; Burns v. County of King, 883 F.2d 819 (9th cir.1989); state habeas corpus proceedings; Sykes v. James, 13 F.3d 515, (2nd Cir. 1993); probable cause and suppression hearings; Curtis v. Bembenek, 48 F.3d 281, 285 (7th Cir.1995); hearing on inmate's motion to vacate

sentence; Flynn v. Dyzwilewski, 644 F.Supp. 769 (N.D.Ill. 1986); hearing on a motion to quash search warrants; Holt v. Castaneda, 832 F.2d 123 (9th Cir. 1987); and a hearing on a motion during the grand jury phase of an investigation; Briggs v. Goodwin, 712 F.2d 1444, 1448-49 (D.C. Cir.1983). In Holt v. Castaneda, 832 F.2d 123 (9th Cir. 1987), the Court of Appeals for the Ninth Circuit noted that "[i]n adversarial pretrial proceedings as well as at trial, absolute witness immunity is essential if the truth-seeking function of the proceeding is to be fully served." Id. at 832 F.2d at 127.

Other courts have cited Briscoe to extend immunity from civil damages to witnesses in non-criminal proceedings. Myers v. Morris, 810 F.2d 1437, 1466 (8th Cir.), cert. denied, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987) (guardians, therapists, and attorneys who provide reports and recommendations to the family court); Sprecher v. Graber, 716 F.2d 968, 975 (2d Cir.1983) (Securities Exchange Commission corporate investigation); McArdle v. Tronetti, 961 F.2d 1083 (3d Cir. 1992) (hearing on a petition to involuntarily commit plaintiff to a mental health treatment facility); Cignetti v. Healy, 967 F.Supp. 10 (D.Mass. 1997) (Administrative Hearing before the Civil Service Commission involving discipline of firefighter); Thomason v. SCAN Volunteer Services, Inc., 85 F.3d 1365, (8th Cir. 1996) (ex parte proceedings in state court to award of temporary protective custody of child to the state). The witness absolute immunity doctrine has even been extended to non-testimonial sworn statements such as witness affidavits, Thomason v. SCAN Volunteer Services, Inc., 85 F.3d 1365, (8th Cir. 1996); Burns v. County of King, 883 F.2d 819 (9th cir.1989); Sprecher v. Graber, 716 F.2d 968, 975 (2d Cir.1983); and even to Probation Officers' presentencing reports; Demoran v. Witt, 781 F.2d 155, (9th Cir. 1985); Tripati v. I.N.S., 784 F.2d 345 (10th Cir. 1986). In Briggs v. Goodwin, 712 F.2d 1444, 1448-49 (D.C.Cir.1983), the court held

that a United States Attorney enjoyed absolute immunity for testimony given during grand jury proceedings. "[T]he rationale of Briscoe applies with equal force whenever a witness testifies in a judicial proceeding the function of which is to ascertain factual information." Id. at 1449.

The First Circuit has extended the testimonial immunity to non-criminal testimony. See, e.g. Watterson v. Page, 987 F.2d 1, 7-9 (1st Cir. 1993) (holding that psychologist who allegedly presented false testimony and withheld material evidence from court hearing on child abuse charges against mother and grandmother, was immune from liability under § 1983 based on her testimony because all witnesses, including public officials, have absolute immunity from damages liability based on their testimony, even if they knowingly give false testimony); see also Cignetti v. Healy, 967 F.Supp. 10 (D.Mass. 1997) (holding City officials were entitled to absolute immunity in § 1983 with regards to testimony they gave at an Administrative Hearing before the Civil Service Commission involving discipline of firefighter). Thus in the present case, the individual Defendants cannot be held liable for their testimony during the Preliminary Injunction Hearing.

**H. Plaintiff Failed to Serve the Individually-Named Defendants**

The time for filing a responsive pleading commences when Plaintiff has served the Defendants. See Fed. R. Civ. P. 12(a)(1). Service of process for state governmental employees in federal court is governed by civil procedure rule applicable to serving individuals, Rule 4(e). Caisse v. DuBois, 346 F.3d 213 (1st. Cir. 2003). In the present case, Plaintiff has failed to effectively serve the individually named Defendants.

Under Massachusetts law, if the defendant is within the Commonwealth, service may be made either by delivering in hand to him a copy of the complaint and the summons, or by leaving them at the defendant's last and usual place of abode or by delivering in hand to an authorized agent

of the defendant.[2] Mass. R. Civ. P. 4(d)(1). The First Circuit has recognized that the Massachusetts Rule of Civil Procedure 4(d)(1), governing service on individuals, "provides for essentially the same service procedures as the cognate federal rule (i.e., personal service or delivery to the last and usual place of abode)." Caisse v. DuBois, 346 F.3d 213, 216 -217 (1st Cir. 2003). "[T]he First Circuit has made it clear that 'actual notice itself, without more, is insufficient to satisfy the requirements of Fed.R.Civ.P. 4(d)(1).'" DeFazio v. Delta Air Lines, Inc., 849 F.Supp. 98, 103(D.Mass. 1994) (citing Precision Etchings and Findings, Inc. v. LGP Gem, Ltd., 953 F.2d 21, 24 (1st Cir.1992). Thus, "the service of process requirements were not met ... [where] the return receipt indicates that the summons and complaint were neither delivered to [Defendant] 'personally' nor 'at his dwelling house or usual place of abode."' Precision Etchings and Findings, Inc. v. LGP Gem, Ltd., 953 F.2d 21, 24 (1st Cir. 1992).

In the present case, Plaintiff has attempted service upon the individually-named Defendants by certified mailing to the Town Hall. See Pl.'s Summons and Return of Service. Each of the Returns of Summons, on file with the Court, includes a Mail Return Receipt signed by someone other than the named Defendants. See Id. Neither this signatory nor the Town Clerk is an authorized agent to accept individual service for the individually named Defendants nor is the Clerk's office the usual place of abode for Defendants. It is well settled in Massachusetts that "leaving process at a defendant's place of employment does not satisfy the place of abode method of service." Foley v. Walsh, 33 Mass.App.Ct. 937, 600 N.E.2d 611, 613 (1992) (police station is not "usual place of

[2] The Massachusetts Appeals court has held a plaintiff failed to show "good cause" for failure to timely serve summons and complaint upon defendant where there was no evidence that defendant sought to evade service, and plaintiff's counsel delayed in attempting service, did not seek extension of time for service, and did not avail herself of alternative means for effecting service when initial attempts failed. Shuman v. The Stanley Works, 30 Mass.App.Ct. 951, 571 N.E.2d 633 (1991).

abode" for individually named police officer Defendant in civil rights lawsuit) (citing Bell v. Hosse, 31 F.R.D. 181, 185 (M.D.Tenn.1962); see also Gipson v. Bass River, 82 F.R.D. 122, 125 (D.N.J.1979); Perez Lopez v. Mangome, 117 F.R.D. 327, 328 (D.P.R.1987)). In the present case Plaintiff's attempt to effect service on the individual defendants by certified mailing to the City Hall. This is not proper service, therefore Plaintiff's Complaint must be dismissed for Lack of Service of Process.

Respectfully submitted,

The Defendants,
TOWN OF DOUGLAS, BOARD OF SELECTMAN FOR THE TOWN OF DOUGLAS, SHIRLEY MOSCZYNSKI, JAY O'CONNOR, AND PAMELA HOLMES,
By their attorneys,

**PIERCE, DAVIS & PERRITANO, LLP**

John J. Cloherty III, RI Bar No. 5068
Ten Winthrop Square
Boston, MA 02110
(617) 350-0950

Providence Office:
128 Dorrance Street - Suite 400
Providence, RI 02903

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail (by hand) on 3/2/06.